Good morning, Your Honors. May it please the court, legal learn from the ACLU for petitioners. I'd like to reserve four minutes for rebuttal, if that's okay. The petitioner in this case entered the country. The Supreme Court has never in the history of this country allowed someone who has entered this country to be removed without review of his legal claims, nor has this court in the history of the country ever allowed that. The government's position is, well, he was only here for a little while and entered unlawfully. And so they make three, essentially three arguments, as I understand it. The first is they link habeas corpus to due process and say he doesn't have any due process rights because he was only in the country a little while. Therefore, he doesn't have habeas corpus rights. Is habeas corpus rights tied to due process rights? No, Your Honor. And that's exactly the point I wanted to make to start out with. To begin with, it can't be, and this Court has made that point in Flores-Miramontes and the Supreme Court made it in Boumediene. And one of the most obvious reasons it can't be linked is because the suspension clause was in the original Constitution. The Bill of Rights in the Fifth Amendment came four years later. The suspension clause was designed to ensure the legality of deprivations of liberty. And when it was first enacted, what that meant is to ensure compliance with statutes and regulations. Only later did the Bill of Rights get enacted. So it absolutely can't be linked. And Boumediene made that point not only about the Bill of Rights being four years later, but Boumediene actually reserved the question of whether alleged enemy combatants at Guantanamo had due process rights but squarely held they had habeas corpus rights and, in fact, invalidated the statute on suspension clause grounds. The second point. If it's not linked to due process rights, what tests do we apply to determine whether or not the suspension clause applies? Your Honor, I think what you would do is simply look to your court's cases and the Supreme Court's cases. And what the Supreme Court has said is habeas corpus must be available to challenge removal orders. And they have never suggested — Where did they say that? In St. Cyr, Your Honor. In St. Cyr, which resulted from people who were living in the United States, correct? And they were basically legal permanent residents? Yes, Your Honor. And you see no difference between a legal permanent resident and an individual who's just arrived at the border? Well, Your Honor, that's the point I want to actually get to. And I want to talk about that. Right. So that's the crux of the government's argument is I think there's no question that St. Cyr held it for lawful permanent residents. This Court has then gone on to expand it. And you take Ramadan with someone who overstayed their visa, wasn't a lawful permanent resident. But where you see that recency doesn't matter for the suspension clause, I think, are two main places. One is the finality-era cases dating from 1891 to 1952. That's the critical set of cases, as this Court has repeatedly said in Magana Pisano, Flores-Miramontes, Ramadan, Singh, and as the Supreme Court said in St. Cyr. You look to those cases because during that era, Congress did what the government says has happened now. It said, look, we're no more review in Federal court. The only review can be that which is required by the suspension clause. And you look at those cases, they routinely reviewed habeas corpus petitions even from individuals stopped at a port of entry, never even made it into the country, routinely reviewed. That's the EQ case from 1892. It's G. Joe. It's a bunch of other cases. And those are . . . What do we do . . . I mean, there's a whole history of those finality cases then fitting in with later cases and the Supreme Court then making certain limiting statements. We have in the Ninth Circuit at least two cases that would restrict this panel, it seems to me, both Duringcon and Pena. So I'd appreciate your comments on the applicability of those cases. Right. So let me start with your first question about later Supreme Court cases. I don't think there's ever been a Supreme Court case restricting the suspension clause by any means. St. Cyr interchangeably relied on cases of lawful permanent residents as well as people at the border. Then you have Boumediene applying the suspension clause to individuals who never came close to stepping foot in this country who were at Guantanamo and said the suspension clause doesn't work that way. It's whether the government has control over you. So that, I think, puts a complete end to it. Let me address Duringcon. We'll go back to Boumediene because I think I might have some disagreement with you on how Boumediene's factors apply here. But why don't we start with the Pena and Duringcon. Right. So Duringcon, Your Honor, was an arriving, meaning at a port of entry, non-asylum case. So I think at a minimum, this Court would say whatever Duringcon meant to do, it can't resolve the suspension clause rights of someone who actually entered the country. Even on the government's own theory that you're connecting due process to someone at a port of entry. I think Duringcon has to be different. Duringcon. Well, the Court did address suspension there, right? Maybe you disagree with their, the Court's statement, but it was addressed, correct? Well, Your Honor. Well, the answer to that is yes or no. In our view, no. So using the word suspension and saying that it didn't apply here is not addressing it? Well, I think, Your Honor, what it did is say we're going to, we think maybe the Petitioner, even though he didn't use the word suspension clause, may have been talking about the suspension clause and then looked at Lee v. Eddy. And basically I think what Duringcon said was you're at a port of entry, you have no due process rights, therefore you don't have habeas rights. They didn't address Boumediene, did they? No. That's the other point. Right. I think this is my overarching point about Duringcon. It has no analysis and it didn't address Boumediene, it didn't address the finality of our cases. So I think given how momentous the question is here today, to read Duringcon's two sentences beyond the facts it presented, I think the government's wrong to suggest that that panel meant to resolve every suspension clause issue, including for individuals who entered the country. And so on Pena, Pena was a petition for review straight to this Court. It wasn't a habeas case and it had no discussion by the Petitioners of the suspension clause. It only addressed the Webster principle of a review of constitutional claims. And one thing I would note is the Court put out an order to see whether it should take it en banc. The Petitioners still didn't address the suspension clause. And the amendment that the Court made after that order and after the supplemental briefing specifically said we're going to add this sentence. The Petitioner has no colorable constitutional claim. And then only then added the additional language and there may be other avenues of review. But ultimately the holding there was there is no colorable constitutional claim. And so I think to read this is such a momentous question for the first time in history for the Supreme Court or this Court to say someone who entered the country has no suspension clause rights and no review of legal and constitutional claims. I do not believe that the government is right that they should attribute to those other panels where they weren't the same facts and procedural posture that kind of sweeping ruling. You're a little bit getting ahead of yourself when you say no rights at all, but because there are limited statutory review rights, right? There are, Your Honor. And I guess your case must be the statutory, the limitation on statutory rights makes them insufficient under the suspension clause. Exactly, Your Honor. And that's the better way to put it. We do believe, and it's in our briefs, that the statute could be construed to provide review of our claim. But let me address your question. The suspension clause doesn't just provide you a forum. It has to provide you a sufficient scope of review. It has to provide you review of legal claims, not just essentially mistaken factual claims, which is what the statute does. And that is the Supreme Court in St. Cyr said application of the law and interpretation of the law, and notably, and this may be going to your question, Judge McKeon, about Boumediene, Boumediene could have cited anything for the proposition of the scope of the suspension clause. It's specifically at page 779 cited St. Cyr for the proposition that not only do you have to be able to get into court on habeas corpus, but you have to have a certain scope of review. And what Boumediene said is it's uncontroversial that it at least has to include the application of law and legal claims. And so we do not think, we don't even understand the government to be saying that this is in the country. And so that threshold step in Boumediene. Well, one of the difficulties with Boumediene, of course, is that a large part of it was directed to this entire Guantanamo, Cuba extraterritoriality. And so there's the two steps in Boumediene where you, you know, where they ultimately have three steps, but two in the first question about, well, what kind of citizenship or detaining is going on here. So it seems hard to translate that Guantanamo exegesis into a situation here. Do we just ignore that part of Boumediene because it's not applicable? What's your view on that? Yeah, Your Honor, that's a very good question. I think you do ignore it because that part is not even relevant. The only reason it was an issue in Boumediene is because it was so novel. It wasn't actually novel historically, as all the historians briefs pointed out to the Supreme Court, and they ultimately concluded. But it was novel because they were at Guantanamo, which wasn't de jure U.S. sovereignty. And so that's the only reason the Supreme Court had to deal with this. I am not aware of any precedent that could potentially say the suspension clause doesn't even apply to someone on U.S. soil. But I guess if you look at the first factor under Boumediene here, Mr. Thurasigian is present in the United States, right? I'm sorry? He's present here. He's on U.S. soil. Exactly. Your Honor, that's why I think in your answer to your question, Judge McKeon, I think that part is separate. The part that's critical about Boumediene, I think, is, I mean, it just goes to show that I think this is an a fortiori case because he's on U.S. soil. The part about Boumediene that I think is critical is when it finally said let's see what the suspension clause requires, it said the scope of review uncontroversially has to include legal claims. This statute only allows mistaken factual claims. The other part about just the recency of whether there's a connection, how long you have to be here, the finality era cases that the habeas scholars point out and that we discuss were people who never even stepped foot into the U.S. They were at a, I mean, never made an entry. They were at a port of entry. You would have to wipe away all those cases in order to hold that someone on U.S. soil does not have suspension clause rights. I mean, ultimately what I think the government is saying, and I see my time, I'm Congress wants this. But that's no different than historically. Congress in the finality era wanted to limit habeas review. The one thing the Supreme Court has never let Congress do is limit habeas corpus rights. They were just as dissatisfied in 1891 when they passed the finality era as perhaps they were now. So let me ask you this. I want to make something I need to understand. So is it my understanding that the limited availability for review that currently exists in expedited removal cases doesn't, isn't sufficient? Is that? Yes, Your Honor. Right. Okay. And you're not arguing that we could construe the statute to somehow rather allow this kind of review that you just mentioned? We have that argument in our brief statute. It doesn't really go very far, right? It's not your favorite argument. Are we on the? No. So we're in the suspension clause land. Well, Your Honor, let me just put it this way. We are not here to say that the statute is clear in our favor. Right. We think that if you find ambiguity for the reasons we mentioned in our brief, that you can use the suspension. But we are not here to say it's clear-cut in our favor. What is it that you envision happening? We envision, yes. Let's just assume your arguments are good and you prevail on your suspension clause argument, and yes, the district court should exercise jurisdiction and conduct habeas review. What is it that you envision happening? He would review only the – I mean, Boumediene said that there probably is now review of factual claims, but I want to put that aside because he's raising legal claims. He would just do the normal sort of immigration review of legal claims and decide whether any of the regulations or statutes were violated, and then most likely he would say the person needs another hearing. And I would say that if you look at the transcript, it's very clear. So what's the relief you're asking, then, if you were to prevail? Just send it back to the district court to conduct a habeas review? To do the merits. Absolutely, Your Honor. And that's it. Because he only decided a jurisdictional question. He only decided the jurisdictional question, and he said there's no jurisdiction except to review essentially mistaken identity claims. Right. We would just ask you to reverse that jurisdictional ruling and have him do the merits. Let me – I know you're running out of your time, so we'll give you some more. Thank you. All right. The statute that we're actually talking about talks about aliens that are arriving in the United States. So if I arrive at the San Ysidro port of entry, do you think that that individual petitioner would stand in different footing than Mr. Thurigassian? For due process rights, absolutely. For suspension clause rights, we don't believe that the history of habeas corpus would suggest that person is not entitled to habeas. But I do think you don't need to reach that issue, and especially if the court is But I'm just trying to understand the differences. Got it. So if that person had no due process rights, but the immigration officer were inattentive and by a miracle you could just kind of shoot by the immigration officer and get yourself one foot onto U.S. soil, then in your view the suspension clause applies. Is that right? Your Honor, can I answer that fully? Yes. Because I think you're raising an important point. I mean, because that to me is central to this whole debate, so I'd like to understand your position. Yes. So let me try and fully explain it. From a due process standpoint, that's where the Supreme Court has crossed the line. Now, the government is saying, well, that creates an incentive to try and sneak by. The Supreme Court is well aware of the give and take of their rule to have a bright line rule. And what they ultimately decided was really everyone on U.S. soil, even at a port of entry, because a port of entry, as Your Honors know, is actually on U.S. soil, would get due process rights by virtue of using persons and it's a territorial rule. But they decided they didn't want people at a port of entry to have due process, so they carved it out that way. They were well aware that obviously the give and take could be people who wanted to get into U.S. soil, would have more rights, but they decided that was the price to pay. But for suspension, and I just, I think as a factual matter, very few people think I can get due process rights but not statutory rights and make that calculation when they're coming in. But putting that aside, that factual part. Well, I mean, if, in fact, if you're concerned about being able to go through an official port of entry, then you might want to arrive here through other means, sometimes in the briefs called surreptitious, but, you know, basically not going through an official port of entry. So, Your Honor, the thing about the suspension clause that's so special is the Supreme Court has decided, yes, due process rights are going to turn on what's essentially an artificial line. They know that the line has pros and cons, but they've stuck to it as this Court has for over 100 years. The suspension clause is different. The Supreme Court has never allowed anybody on U.S. soil, and even someone at a port of entry, and that's all the cases we've talked about, GEO, EQ, all the habeas, to not have suspension clause rights. So what it would mean for someone at a port of entry is they couldn't have due process rights, but on the merits, if the immigration officer violated the statute or regulations, they could assert those in habeas. And so we do think that distance, that incentive to get over the border wouldn't be there for suspension clause rights. I'm simply saying to this panel, if you're concerned that de Racon or Pena may have addressed the suspension clause, the only thing it could have addressed, de Racon addressed the suspension clause, the only thing it could have addressed is for people who are arriving. And so this Court doesn't need to address that. But you would say that even though there's been a regulation interpreting what arriving means, that once you cross the border, you're no longer arriving? No. For statutory purposes, you're still arriving, but not for constitutional reasons. And that is such a critical point, because if what — you know, again, this is the immigration law professor's brief, the habeas scholar's brief. If Congress could manipulate whether you get suspension clause rights or even due process rights, there would be nothing left. I mean, that's the very reason Justice Kennedy and Boumediene talked about why there is no specific language in the Constitution about the suspension clause, because it can't be manipulated by Congress. The suspension — the political branches will always want to eliminate habeas. It's always in their interest to eliminate habeas. It's always in their interest to what they perceive as efficiency and policy goals. They cannot by statute say, well, you're now labeled this, and therefore you don't get suspension clause rights or even due process rights. I mean, that's always been what the political — so then Boumediene and St. Cyr, the government argued ferociously to say Congress's plenary powers decided they don't want habeas. The Court rejected it because the suspension clause is ultimately about a check on the  Thank you.  May it please the Court. Good morning. Joshua Press on behalf of the Federal Defense. Your Honors, I think the answer that Mr. Gallant gave to your last question regarding once someone places one foot across the line, even at a port of entry, that a different analysis suddenly applies I think is really the essence of their case, and it's certainly the main point of contention here. Habeas has always been a procedural mechanism. It is to enforce rights, to make sure and ensure that the proceedings that occurred below or from another court were adequate. That said, when someone doesn't have any due process rights, there's a slightly different calculation that needs to occur. You know, with respect to St. Cyr and Boumediene, I know that those are important cases here. We acknowledge that. But ultimately what St. Cyr holds is that the core of habeas that they're going to, that the idea of if someone steps one foot across the line at a port of entry, they get that core. Well, that might be true, but what is it to affect? If you go back to St. Cyr, it says the habeas right as it was understood in 1789. That, I think they cite to Felker v. Turpin, that's the case. They cite to Swain v. Presley, that's the case. And Swain cites to, I believe, Judge Friendly's article in University of Chicago Law Review. All of that, going back to 1789, is extremely limited. It's limited just like the limitations that Congress placed here in 1252. So which case says that due process rights, you have to have due process rights before you get suspension, before you can resort to the suspension clause? No specific case says that. We acknowledge that Boumediene treats the two as analytically. Distinct. Well, distinct in the sense that there's step one and then there's step two. Now, for the purposes of step two, Boumediene declined to decide that issue and remanded below. For the purposes of suspension clause, they exist separately. We acknowledge, of course, that they're different parts of the Constitution. I think, however, that because the Fifth Amendment was ratified after 1789, it's important to read them in harmony. Because if you think about when the ratification, well, the initial promulgation of the Constitution occurred. Obviously, the founding, you know, they thought that habeas rights were, you know, they were included in the original Constitution. Yes, that's right. And they were well understood. Well understood, goes way back, a long time. I think 1189 was the first time they were issued, yes. They didn't think about the Bill of Rights until later. Right, but they obviously did understand the concept of due process of law. I think that there's no equivocation of that. That also traces back pretty far back. I think Magna Carta that you have outside goes back to 1215. But the point with respect to that is that it's a procedural mechanism. It's never been conceived of its own due process standard. And we believe it's, I mean, obviously, the Fifth Amendment was ratified after 1789. They need to be read in harmony with one another. They should not be read as distinct. What does that mean, though, to be read in harmony? Can you or do you look at due process first or does Boumediene infuse due process in the suspension clause analysis? If you look at Boumediene, it's clear that what they care about is the adequacy of the hearings in the Detainee Treatment Act. I mean, that runs throughout the opinion. What they're talking about there is whether evidence is allowed to be presented or any sort of ability to cross-examine, things of that nature. Those are core due process concerns. We are not saying that aliens who have, let's say, taken a step inside a port of entry or crossed the line, as it were, don't have due process rights in the sense that, obviously, they have substantive due process rights. What we are saying is the level of procedure that is accorded to them has always been whatever Congress has decided it should be. So let me ask you this. What's the test that you think we should apply for determining whether the suspension clause applies in this case? Well, I think it applies, and I think this Court's precedent explained this, when there's been not a channeling or a limiting, but an elimination. And there has not been an elimination in this case. There hasn't been an elimination at all. That's why no court has ever found that to be the case, and there isn't a case on point. When you say this case, you're talking generally about the expedited removal proceeding. In this context, yes. In the limited. So your position is that then the procedures, I guess in 1252, wherever they are, on expedited removal are sufficient to overcome any, what did I say, assertions of suspension clause problems? Yes. That is correct. I mean, if you look at 1252e2, it outlines the scenarios that are available. What about Mr. Gillard's position that the limited review is only of, you know, factual issues and not of legal issues? Well, I think that is not necessarily correct, because whether someone is an alien, for example, in e2a, or whether the order itself, I suppose, was entered into as valid, those involve sometimes legal questions. Now, we think that if you look at St. Cyr and you look at — well, if you look at St. Cyr, it's very clear that the Supreme Court was only talking about purely legal questions. And so to the extent that they rely upon that when we're dealing with mixed questions, it's really inapplicable. You know what I can't still understand is the government's line of analysis in terms of due process versus the suspension clause. So maybe you can, like, walk me through where you think they intersect or, as you've said, need to be read in harmony. We have a statute and we have a constitutional provision. In your view, how does the Court walk through those two elements? Well, I think you need to look first at what the petitioner for the writ is asking for. You know, let's go back to 1215 or 1189. He would like more due process, I assume, in his hearings. He doesn't think those hearings were adequate or appropriate, so he's making a challenge. Well, that's clear. He disagrees with the outcome of the hearing. Well, he disagrees with it because, in his view, it wasn't a real hearing. I'm not sure if that's really what's being alleged. I mean, I think they're inferring that based on the determination that was made, but that's a negative inference. I mean, that's why we submitted. If he got a positive result, he wouldn't be here, of course. Correct. He would be. I mean, some people do get positive results through their credible fair hearing or through the immigration judge, and then, of course, those are added. They're referred to the normal proceedings. Referred to the normal proceedings, and we often don't see those. But here, I thought his complaint was, you know, he's basically saying that these are shell-type proceedings. And it's not that he can't — it's not the factual issues he wants to challenge. It's the implementation of those in making the final decision that he should be removed expeditiously. Well, he's — I mean, so he is clearly disagreeing with the result. Yes. And the analysis that we've seen in the briefing and in the argument here is a matter of the significant possibility standard was misapplied. Otherwise, you could have never come to that same result. Right. That is not really a legal question when what we're talking about here, and if Your Honors look at the supplemental excerpts of record that we did provide, Mr. Thoressegian's admissions are that, you know, he was beaten up. Now, that is something that we do take seriously, and that's why he was referred to USCIS and the asylum officer to hear his story. But if you actually look at the story, he just says, I was beaten up. I don't know who beat me up. But now we're getting into basically a review of his case, which basically I thought the government was telling us we can't do. That is correct. That is absolutely correct. So I'm asking you. Under the statute? Yeah. Under the statute, we can't. Yes. Okay. So let me go back and ask you, we now have his case in front of us. He wants to be able to challenge that outcome of his hearing beyond the three points in the statute. So what is the line and order of analysis you think that the Court should go through in looking at his claim? Well, I take your point. But the reason why we provided the supplemental excerpts of records to show the process that was given is that the analysis is a fact-based analysis. And the Supreme Court case law is replete with cases saying, you know, if Congress wants there to be a summary executive proceeding weighing facts, that is fine. That's Zach and I at V. Wolf from over 100 years ago. And nothing has changed since then on this point. Simply his request for, you know, re-weighing of the merits would do a complete end run around the point of the statute. This is the... See, maybe we're talking past each other, but I still have no answer from the government. I understand what his problem is, because he got a negative determination. You're saying, well, it's just a factual weighing. But it doesn't really fit in the statutory element. So what you're talking about is not even what he's talking about. So my question is, do you... Does his case rest in your view on anything to do with the fact that he was arriving at the border, but he didn't actually go through a formal port of entry? He ended up on the other side of the border. Does that matter, for example, in the suspension analysis? That does not matter in the suspension analysis for the same reasons this Court gave on Bonk and Morales' Cierdo one year before de Rincón. It does not matter for the same reasons that the Court gave in de Rincón, which involved an alien with a lawful permanent resident husband and U.S. citizen child in the United States at the time. So you don't think then, I mean, does it matter for due process in terms of where and when you are and what kind of status you're in? Yes. It's contextual. So I'm now totally confused by the government's argument, because I thought a large part of it was that it did matter. He's not like Sancerre people, which, you know, like a lawful permanent resident. He's an undocumented individual who happens to be, what, four miles inside the U.S. border. He was 25 yards. Oh, 25 yards. Okay. 25 yards. So you're saying that doesn't really matter? It doesn't affect, for example, his suspension clause rights and what might be an appropriate hearing for him? Well, so — Does it have anything to do with it? With respect to the first point on due process, it does not have anything to do with it. That is very clear from Supreme Court case law. Okay. Because whatever Congress decides the procedure he should be afforded is the process is sufficient for purposes of the Fifth Amendment. That's just what the Supreme Court has said repeatedly. With respect to the suspension clause analysis, ultimately the point of arriving aliens and the point of IRA-IRA in 1996 and why it was passed into law and why it was signed by President Clinton was to eliminate the distinction between, you know, you got one foot passed, you did not — you've waited patiently and wanted to arrive at a port and go through the lawful procedure because it was unfair and it created perverse incentives. That was the point in our briefing of why we cited Morales v. Chiodo, which relies upon the exact same legal analysis there, to say arriving aliens are a class. I think with respect to this case, and this must be an as-applied case. I'm sorry. No, go ahead. Well, this must be an as-applied case because a systemic challenge could only be brought in D.C. With respect to this case, to say that 25 yards is not an arriving alien, we think defies the very functional approach that was taken in Boumediene. I mean, the whole point of affording habeas to aliens who are outside of this country in that case was based on, as Your Honor pointed out before, they were being held for six years at that time under U.S. control. That is completely different from this case. Maybe I'm trying a little too hard to fit this into the Supreme Court law, but I think that's what we're trying to do. In your view, do we walk through the elements in Boumediene, such as the citizenship status, whether they're detained? Do we look at that under Boumediene? Yes. I mean, you can do that. We have that argument in our briefing, that even if you accept that the suspension clause, just for the purposes of habeas sake, that they must have that. If you look at that here, it's been completely complied with for the purposes of those factors you discussed in Boumediene because they have no tie, he has no ties to this country. His ties to the country are the 25 yards that he made it in, or in Your Honor's hypothetical, the one step. If that is the amount of tie and stake that an alien needs to have to get habeas for habeas' sake, then we would submit that due process was complied with when he got reviewed by an asylum officer. So he's effectively at the point of entry? Well, that was the whole point of Ira-Ira. That was the whole point of Morales v. Chiodo with respect to that. It's the old Meze case or whatever. Yes. They say basically you're assimilated to that status. That is absolutely correct, Your Honor. I mean, Meze was on Ellis Island for years, and his whole claim, like the detainees in Guantanamo, was you cannot hold me indefinitely. That was an LPR who was returning from the Eastern Bloc. The point there is that just being on U.S. soil is not going to get you the writ. Being on U.S. soil, you are entitled to due process. Certainly we can't torture you, for example. We're never going to do that. But the point with respect to what processes do is ultimately the question of this case. When you have the review of your credible fear claim. Do you think that comes at the conclusion then of the Boumediene factors, that you look at this due process, what processes do? I think that's. What I'm trying to ask you throughout the argument, and maybe I'm probably not doing it articulately, I'm just trying to get a framework for where due process comes in, because you first say, well, of course they have due process rights, but then they're satisfied under the statute. But then I'm saying, well, if you're under the suspension clause, where do you come back as you've now looped back to the due process he's gotten? Where does that fit into the suspension clause analysis? I see that I'm out of time. May I answer?  Thank you. I think it comes in analytically first with respect to do we have control over the person. If we have control of the person, they have due process rights in the sense that we cannot torture them. We cannot commit substantive due process violations over them. With respect to the procedures that are allowed. Do you think that's the only thing we can't do is torture people? No. There are many ways that the substantive due process case law could be violated. I think my opposing counsel could list those for you better than I can. But the point is that that is a distinct analysis from the procedure that is due. Congress has been very clear for over a hundred years that the procedure that is due is what Congress provides. And this Court's case law is fully in accord with that with respect to the procedural analysis. So if the statute said arriving aliens for habeas purposes, it can only challenge to make sure that you have the right name of the person. That would be sufficient process? I think, Mayor, first off, that's not this case. I know it's not. It's essentially a mistaken identity. I thought that's what you said. I mean, we have detained U.S. citizens at the border under this statute, and they need to show, of course, I'm not an alien, I'm a U.S. citizen. So I'm just saying if you're only asking, you know, are you Mr. Alberto Gonzalez or whatever your name is, that's the only thing I'm going to let you challenge in my habeas proceeding, would that be a violation of the suspension clause? Well, I think that would be going beyond what was allowable in 1789. That would be going beyond what's in the core here of 1252, E-2, is going to what interests are fundamental and what must be respected and to be vindicated in habeas. Thank you. Thank you. I'll give you an additional minute, two minutes, for rebuttal. I'm going to try and be very quick, but there's a lot. I just let me try and tick through things. The due process thing seems to be getting complicated. Let me just say two things quickly about that. This Court has repeatedly held that it doesn't matter how many feet over. You look at the Raya Vaca case from recently. All the cases cited at page 34, 35 of our opening brief, the cases in the Immigration Scholars brief, the Court has drawn a bright line. This would be an enormous holding if you were to say it's the amount of distance you're in the country. And what test would you apply, as the Immigration Scholars said? One day, three days, 25 yards? But it can't do process in any event does not link up with habeas. All of the cases the Supreme Court cited in St. Cyr, all these cases say you have to have review of statutory and regulatory claims. That's the principal reason why the suspension clause was enacted. And going to the forum question, the government suggested, well, as long as you have some review, even if it's just review of mistaken identity claims, that's sufficient. If that were sufficient, St. Cyr would have never had a suspension clause problem. There was enormous review available under the scheme that was at issue in St. Cyr. You could challenge the portability. You could challenge a bunch of things. The same in Ramanan. Ramanan was about could you have review of mixed questions of law, which it said the Constitution requires, not just pure questions. So it can't be that you just have some review. On the merits, we are raising legal claims about whether the regulations and statutes were violated because the asylum officer did not take into account country conditions. He did not elicit basic information, which is they're required by regulation to ask follow-up questions. He didn't do that. Morales v. Securito was a totally different case, not about habeas. It was about reinstatement. The one final thing I just want to sort of leave you with is these are the same arguments that we have heard. I mean, this Court knows because it has a lot of institutional memory on these issues. In 1996, the same arguments were made, well, look, these are criminal aliens. They're challenging only the ability to get discretion and relief. There's no way there's habeas. The Supreme Court was all about the history. This Court, even before St. Cyr and Magana Pisano, Judge Thomas went through that whole history of the finality or Flores, Miramonte, this, Ramadan, then Boumediene comes and they say there's no way habeas applies. The Supreme Court, we've won some cases in the Supreme Court, we've lost some on immigration and plenary power. The one thing the Supreme Court has never allowed is habeas to be sacrificed. And just let me end with your question, Judge McKeown, because I know the Boumediene analysis is a little tricky how to map it on here. That threshold inquiry about extraterritoriality doesn't map on here, because it was a sui generis thing of them being outside of de jure. There is no way the suspension clause can't apply to someone on U.S. de jure sovereignty. The only question is, is the scope of review, as Your Honors have pointed out, sufficient? And it can't be just because there's some claims you can raise, factual claims. It has to be legal claims. You'd be wiping away the whole finality. And the final point is, if you take the entry fiction doctrine, yeah, it's an odd thing, but the Supreme Court and this Court have stuck to it for 120 years. Port of entries, like where Mazzai was, Ellis Island was a port of entry, are different than stepping in. And notably in Mazzai, the Court said no due process because you're an arriving alien at a port of entry, unlike our petitioner. But yes to habeas. And that has been all throughout the finality era cases. So many of those cases are port of entry cases. Justice Holmes and Gigio, arriving alien but still reviewed the statutory claim. Thank you, Your Honors. Thank you. Thank you both for argument and briefing. The case just argued is submitted and we're adjourned for the morning.
judges: Tashima, McKeown, Paez